# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MARY MARCHBANKS**                                                          **PLAINTIFF**

**V.**                             **CIVIL ACTION NO.: 1:07CV299-SA-SAA**

**DOLGENCORP, INC.**                                              **DEFENDANT**

## MEMORANDUM OPINION

Comes now before this Court, Defendant's Motion for Partial Summary Judgment [48]. After reviewing the motion, responses, rules, and authorities, the Court makes the following findings:

### Factual and Procedural Background[1]

On January 3, 2007, Plaintiff Mary Marchbanks went in Defendant's ("Dollar General") store to purchase garbage bags and potato chips. Marchbanks testified that the cashier, Lakeyta Bailey, was friendly and helped her look for the items she wanted to purchase. Marchbanks purchased only a box of garbage bags for one dollar. According to Marchbanks, she gave Bailey a twenty dollar bill,[2] but Bailey only gave her approximately ninety cents in change back. Marchbanks said to Bailey, "No, ma'am. You need to put eighteen more dollars up there." Bailey

---

[1] In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh the evidence, or draw from the facts legitimate inferences for the movant. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255, 106 S. Ct. 2505. The Court's factual summary is so drafted.

[2] Marchbanks is adamant that she only had a twenty dollar bill. Marchbanks testified that she spent her entire social security check which was every penny she had paying bills, and her son had to give her twenty dollars for gas and food.

responded that Marchbanks only gave her two dollars. Marchbanks countered back, "No ma'am, I gave you a twenty." Marchbanks testified that Bailey then said, "bitch, I'm not giving you anything." Although Marchbanks denied accusing Bailey of stealing her money, she did tell Bailey that "she took or did something with it."

The store manager, Santel Blair, came to the front of the store and told Marchbanks that she would count the cash register drawer. Marchbanks responded to Blair stating "you can count the register down, but I know what I gave her." Marchbanks admitted she reached her hand into the cash register and said, "that's my twenty right there." Blair jerked the twenty dollar bill away from Marchbanks. Blair counted Bailey's cash register drawer and informed Marchbanks that the drawer was not over the amount listed on that day's transaction print-out. Blair requested Marchbanks' name and number and said that they would call Marchbanks at the end of the night after counting the register again; however, Marchbanks never received a call from Blair.

At some point while Marchbanks was still in Dollar General, Marchbanks called several people on her cell phone. Marchbanks called her cousin, Patricia Betts, and her daughter, Nateisha Marchbanks. Betts and Nateisha both testified that Marchbanks called them hysterically crying and exclaimed "these people took my money." Marchbanks son, Randy Gunter, also received a call from his mother. According to Gunter, when Marchbanks called, she was crying, and he could hear people in the store cursing at Marchbanks. Further, Gunter testified he heard Marchbanks reference the surveillance cameras and insist they look at the tape. Gunter stated the response he overhead an employee make was "we ain't got to do nothing."

While Blair was talking to Marchbanks, Bailey allegedly was laughing and had a smirk on her face. In response, Marchbanks called Bailey a bitch. Blair told Marchbanks that she was not

2

going to tolerate name calling and told Marchbanks to leave. After Blair told Marchbanks to leave the store, Marchbanks went outside and called the police. Shortly after calling the police, Nateisha arrived at Dollar General and waited for the police with her mother. The police arrived and advised Marchbanks that she had the right to go to court and file charges if she thought she had been wronged. Nateisha testified that while the police were outside with them, the Dollar General employees were standing just inside the store "making faces and being rude." When pressed for specifics about the employees' behavior, Nateisha stated the employees were "saying stuff and throwing up their hands." She also stated that they "were saying stuff like bitch." After speaking with the police, Marchbanks went home and did not press charges.

The next day, Marchbanks' son, Randy Gunter, went to Dollar General and confronted Bailey stating, "So you cheated my mama out of her money?" As the confrontation progressed, another Dollar General employee, Myeisha Scott, came to the front of the store. According to Gunter, all parties, including himself, were using profanity and threatening to fight. Gunter left the Dollar General after the police were called but before the police arrived.

Several days after the incident with Marchbanks, Bailey went to the police station to press charges against Marchbanks. At the station, Bailey told the police officer that Marchbanks had called her a bitch at Dollar General. According to Bailey, the police officer advised her that she could sign a general affidavit against Marchbanks based on that conduct. Bailey described the entire incident to the police officer, he typed up the general affidavit, and Bailey signed it. The general affidavit stated that Marchbanks had disturbed the peace at Dollar General. When the case was called in court, it was dismissed because Bailey arrived late to the proceeding. Bailey, Scott, and Blair also pressed charges against Gunter. Gunter testified he was found guilty and assessed a five

3

hundred dollar fine.

On Gunter's court date, Marchbanks alleges she was harassed outside of the Justice Court by Bailey, Scott, and Blair. Marchbanks testified that the three women threatened to fight her and called her a bitch. Marchbanks claimed police officers intervened before a fight ensued.

Marchbanks filed the subject Complaint in the County Court of Lowndes County, Mississippi, on July 3, 2007. The Complaint states claims for conversion, malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress. Marchbanks seeks an unspecified amount of both actual and punitive damages. Defendant removed the case on November 20, 2007. Defendant's Motion for Partial Summary Judgment was filed on September 15, 2008 and is now ripe for consideration.

**Summary Judgment Standard**

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(C). Facts are considered "material" if they "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 248, 106 S. Ct. 2505. To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. Lavespere v. Niagra Mach. & Tool Works, 910 F. 2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. Id.; Newell v. Oxford Mgmt. Inc., 912 F. 2d 793, 795 (5th Cir. 1990); Medlin v. Palmer, 874 F. 2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including

the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. See FED. R. CIV. P. 56(C); Williams v. Adams, 836 F. 2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. Skotak v. Tenneco Resins, Inc., 953 F. 2d 909, 915-16 & n. 7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. Forsyth v. Barr, 19 F. 3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

To prevail on a summary judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or show that there is no evidence to support an essential element of the plaintiff's claim. Id. at 322-24, 106 S. Ct. 2548.

To negate a material element of the plaintiff's clam, the defendant must negate an element that would affect the outcome of the action. See Anderson, 477 U.S. at 247, 106 S. Ct. 2505. If the defendant moves for summary judgment alleging no evidence to support an essential element of the plaintiff's claim, the defendant need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the defendant need only show that the plaintiff, who bears the burden of proof, has adduced no evidence to support an essential element of his case. See Celotex, 477 U.S. at 325, 106 S. Ct. 2548.

When the moving party has carried its summary judgment burden, the respondent must go

5

beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. Arbaugh v. Y & H Corp., 380 F. 3d 219, 222 (5th Cir. 2004) (citing Celotex, 477 U.S. at 324, 106 S. Ct. 2548). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. See Little v. Liquid Air Corp., 37 F. 3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. See Anderson, 477 U.S. at 249-50, 106 S. Ct. 2505.

**Discussion**

The Complaint asserts state law claims for conversion, malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendant has moved for summary judgment on all claims except conversion.

**I.     Malicious Prosecution**

Plaintiff alleges malicious prosecution and abuse of process. The clarification of the distinction between the two causes of action, as set out in State for the Use and Benefit of Foster v. Turner, would be appropriate here:

> While some cases have confounded the action for abuse of process with the action for malicious prosecution, the two are essentially different and independent. An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued. Thus it is said in substance that the distinction between the two is that the malicious use of process is the employment of process for its ostensible purpose, but without reasonable or probable cause, whereas the malicious abuse of process is the employment of a process in a manner not contemplated by law, or to obtain an object which such process is not intended by law to protect.

319 So. 2d 233, 236 (Miss. 1975).

In order to maintain a suit for malicious prosecution, Plaintiff must establish the following

6

elements by a preponderance of the evidence:

>  (1) The institution or continuation of original judicial proceedings, either criminal or civil;
>
>  (2) by, or at the insistence of, the Defendant;
>
>  (3) the termination of such proceedings in Plaintiff's favor;
>
>  (4) malice in instituting the proceedings;
>
>  (5) want of probable cause for the proceedings;
>
>  (6) the suffering of damages as a result the complained of action or prosecution.

Moon v. Condere Corp., 690 So. 2d 1191, 1194 (Miss. 1997).

In the present motion, Defendant concedes elements (1), (2), and (3) are met, but submits that Marchbanks cannot create a genuine issue of material fact as to the existence of malice (element (4)), want of probable cause (element (5)), or damages (element (6))[3]. The Court looks first to the issue of malice.

Marchbanks' basis for her malicious prosecution claim is that Bailey filed false criminal charges against her "apparently for the purpose of avoiding criminal prosecution of herself and to avoid further inquiry into whether or not she had stolen Plaintiff's money." Marchbanks contends that by Bailey bringing charges against her first, she was prevented from bringing her own charge against Bailey. Further, Plaintiff argues that the retaliatory nature of Bailey's motive is demonstrated by the fact that, as far as Bailey was concerned, there was no reason to prosecute Marchbanks after the incident at the store on January 3, 2007. According to Marchbanks, it was

---

[3] Damages are an element of Plaintiff's claims for malicious prosecution and abuse of process. Plaintiff describes emotional distress as the resulting damage for both claims. Emotional distress is discussed *infra*.

7

only after Bailey learned that Marchbanks intended to bringing charges against her that she decided to preempt Marchbanks and bring charges first. Marchbanks argues that Bailey's alleged retaliatory motive constitutes malice (element (4)). Plaintiff relies upon the deposition testimony of store manager, Santel Blair, to support her argument:

> Q. Did – does the store have some policy about when it might be appropriate for a store employee to press charges against one who was in the store?
>
> A. I'm not sure.
>
> Q. Okay.
>
> A. I don't know. I do remember [Bailey] and the police officer – the police officer said that [Marchbanks] wanted to press charges on [Bailey]; and [Bailey] said, Well, I want to press charges on her. That's the only conversation about pressing charges that I remember.

The Court is unpersuaded by this argument. Conclusory, unsupported allegations and speculations are insufficient to defeat a motion for summary judgment. See e.g., Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1995) (internal quotation and citation omitted) (summary judgment is appropriate if the "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation"). Marchbanks evidence is insufficient to raise a genuine issue of material fact as to the element of malice.

As for element (5), want of probable cause, "[a] claim of malicious prosecution will not lie if there was probable cause to make the arrest." Richard v. Supervalu, Inc., 974 So. 2d 944, 948-49 (Miss. Ct. App. 2008) (citing Van v. Grand Casinos of Miss., Inc., 767 So. 2d 1014, 1019-20 (Miss. 2000)). "'Probable cause is determined from the facts apparent to the observer when prosecution

is initiated.'" Id. (quoting Van, 767 So. 2d at 1020); see also Hudson v. Palmer, 977 So. 2d 369, 381 (Miss. Ct. App. 2007)("In the context of a malicious prosecution claim, probable cause consists of a reasonable and honest belief in the guilt of the accused.").

Bailey's General Affidavit brought charges under Mississippi Code Annotated Section 97-35-15 which states, in relevant part:

> Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke breach of the peace, or by conduct which may lead to a breach, or by any other act, shall be guilty of a misdemeanor . . . .

Looking only at the undisputed evidence and drawing all reasonable inferences in Marchbanks' favor, the Court finds probable cause existed to bring charges against Marchbanks for breach of the peace. Marchbanks admits she used profanity during the incident. Marchbanks also admits she accused Bailey of taking or doing something with her money. Further, Marchbanks testified that she reached her hand into the cash register and attempted to grab a twenty dollar bill. The Court therefore concludes that Marchbanks cannot prevail on her malicious prosecution claim against Defendant, and summary judgment is granted on that claim.

## II.  Abuse of Process

Abuse of process is "the employment of process in a manner not contemplated by law, or to obtain an object which such a process is not intended by law to effect. Turner, 319 So. 2d at 236. In Mississippi, an abuse of process claim is established by showing the following:

(1)  that the Defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process;

(2)  that the Defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and

(3) that damage resulted to the Plaintiff from the irregularity.

Id. An action for abuse of process "is concerned with the improper use of process *after* it has been issued." Id. (emphasis added). The Fifth Circuit recognized that "[a] party makes improper use of the judicial process where, for example, he mistakenly fails to serve the opposing party with a copy of a subpoena for medical records. On the other hand, where a party files a suit for impermissible reasons, the proper remedy is malicious prosecution, not abuse of process." EOG Resources, Inc. v. Beach, 54 Fed. App'x 592 (5th Cir. Nov. 26, 2002) (citing Williamson v. Keith, 786 So. 2d 390, 394 (Miss. 2000)); see also Moon, 690 So. 2d at 1197 (noting that "the defendant's complaint was not based on any perversion of process, rather it was based simply on the filing of the suit").

Marchbanks makes the same argument for her abuse of process claim as she did for her malicious prosecution claim. Marchbanks argues that Bailey filed false criminal charges against her "apparently for the purpose of avoiding criminal prosecution of herself and to avoid further inquiry into whether or not she had stolen Plaintiff's money." Marchbanks contends that by Bailey bringing charges against her first, she was prevented from bringing her own charge against Bailey. Moreover, Marchbanks again relies on the testimony of Santel Blair in support of her argument.

Drawing all reasonable inferences in Plaintiff's favor, the Court finds this evidence is insufficient to maintain an abuse of process claim. Moreover, Plaintiff's claim is not based on any perversion of process after suit has been filed, rather it is based simply on the filing of the suit. Therefore, Defendant is entitled to summary judgment as a matter of law on Plaintiff's abuse of process claim.

**III.    Intentional Infliction of Emotional Distress**

An action for intentional infliction of emotional distress occurs "[w]here there is something

about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . the results being reasonably foreseeable . . . even though there has been no physical injury." Sears, Roebuck & Co. v. Devers, 405 So. 2d 898, 902 (Miss. 1981). "[T]he contours of this 'outrage or revulsion' are not clearly defined in the Mississippi case law." White v. Walker, 950 F. 2d 972, 978 (5th Cir. 1991). However, "[d]ecisions rendered by the Supreme Court of Mississippi and federal courts sitting in diversity jurisdiction in Mississippi on intentional infliction of emotional distress claims consistently turn on whether plaintiff satisfies the requisite elements sets forth in the Restatement (Second) of Torts." Jenkins v. City of Grenada, 813 F. Supp. 443, 446 (N.D. Miss 1993). Comment *d* to Section 46 offers the best explanation of this tort:

> One who by extreme and outrageous conduct intentionally and recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm . . . . [G]enerally, the case is one in which the recitation of the fact to an average member of the community would arouse as a resentment against the actor, and lead him to exclaim, 'outrageous.' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.

Restatement (Second) of Torts § 46 cmt. *d*.

> Furthermore,
>
> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id.; see also Burroughs v. FFP Operating Partners, L.P., 28 F.3d 543, 546 (5th Cir. 1994). "[I]t is the nature of the act itself – as opposed to the seriousness of the consequences – which gives impetus to legal redress." Sears, 405 So. 2d at 902.

11

Having carefully considered this matter, the Court is of the opinion that Defendant is entitled to summary judgment on this claim. Although Court acknowledges that the Dollar General employees' conduct at times was inappropriate and unprofessional, it holds that, as matter of law, Defendant's conduct was not so extreme or outrageous as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized community.

## IV.   Negligent Infliction of Emotional Distress

In the alternative, Plaintiff argues that if the Court finds Defendant's infliction of emotional distress was unintentional, then the Court should find Defendant's infliction of emotional distress was, at the very least, negligent.

The Fifth Circuit, in Edmonds v. Beneficial Mississippi, Inc., affirmed the district court's dismissal of plaintiff's claim for negligent infliction of emotional distress because he failed to show a physical manifestation of harm. 212 Fed. App'x. 334 (5th Cir. Jan. 4, 2007). The only evidence of harm the plaintiff could point to were allegations, unsupported by medical evidence, that his blood pressure had increased. Id. The Edmonds Court recognized that Mississippi law is unclear as to whether a physical manifestation of harm is required for negligent infliction of emotional distress cases. Id. The Fifth Circuit's discussion of Mississippi law is as follows:

In 1999, the Mississippi Supreme Court adopted a permissive view, allowing plaintiffs to "recover for emotional distress and mental anguish proximately resulting from ordinary negligence" without any manifestation of harm "provided only that the injury was reasonably foreseeable by the defendant." Id. (citing Adams v. U.S. Homecrafters, Inc., 744 So. 2d 736, 743 (Miss. 1999)). In 2001, the Mississippi Supreme Court took the opposite view, holding that "some sort of manifestation of injury or demonstrable physical harm" was required. Id. (citing American Bankers'

12

Ins. Co. of Fla. v. Wells, 819 So. 2d 1196, 1208 (Miss. 2001)). Despite its seemingly clear pronouncement of the law on this issue, American Bankers' did not overrule Adams or expressly adopt the more restrictive view as the correct standard for future cases. Edmonds, 2007 WL 26837, at *3. The Fifth Circuit held that although Mississippi courts have, at times, continued to apply the permissive view, the district court did not commit error by relying on the more restrictive American Bankers' standard. Id.; see American Bankers, 819 So. 2d at 1209 ("[w]e have applied the line of cases adopting the more restrictive majority view in the most recent holdings on this issue, although the cases applying the minority view have not been overruled").

In the instant case, even under the permissive standard, Marchbanks' claim would still fail because she still must prove *at least* mental injury in the absence of physical manifestation. See Illinois Cent. R.R. Co. v. Hawkins, 830 So. 2d 1162, 1174 (Miss. 2002); see also Adams, 744 So. 2d at 743 ("language . . . adopting the term 'demonstrable harm' in place of 'physical injury,' indicates that the proof may solely consist of evidence of a mental injury without physical manifestation"). In fact, plaintiffs must offer "substantial proof" of emotional harm, and the emotional injuries must be reasonably foreseeable from the defendant's actions. Adams, 744 So. 2d at 742-43; see Illinois Central, 830 So. 2d at 1174 (noting that the Mississippi Supreme Court has held that sleeplessness, nightmares, and even multiple visits to a medical doctor were insufficient proof of emotional harm); see also Floyd v. Amite County Sch. Dist., No. 3:04CV78, 2008 WL 2954972, at *15 (S.D. Miss July, 29, 2008) (holding that nightmares and difficulty sleeping, in conjunction with being shaky, agitated, angry, and upset were insufficient proof of emotional distress).

Marchbanks claims that the incidents complained of triggered depression and difficulty

sleeping. Marchbanks admits that she had severe emotional troubles prior to the Dollar General incidents; however, she contends that she was doing better and was able to wean herself off medication three months prior to the incidents at issue. Marchbanks testified that after the confrontation with Bailey she was forced to see a physician and claims she was prescribed medication to treat her depression and sleeping difficulties.

Plaintiff's contentions are unsupported by medical testimony, to the effect that Marchbanks' emotional problems were triggered by the subject incidents. Marchbanks did not offer any such evidence to support her contention in the summary judgment motion. Marchbanks cannot recover for emotional distress damages resulting from ordinary negligence without proving some sort of physical manifestation of injury or mental injury. See Adams, 744 So. 2d at 743 ("proof may solely consist of evidence of a mental injury without physical manifestations"). Testimony that Marchbanks is very depressed and has difficulty sleeping is insufficient to meet the required burden of proof. Therefore, summary judgment must be granted on this claim as well.

## **Conclusion**

Based on the foregoing analysis, it is hereby ordered that Defendant's Motion for Partial Summary Judgment [48] is **GRANTED**. Accordingly, Plaintiff's claims for malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress are dismissed as there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law on each claim.

A separate order in accordance with this opinion shall issue this day.

**SO ORDERED** this the 20th day of November 2008.

/s/ Sharion Aycock  
**U.S. DISTRICT JUDGE**